# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1038

_____

National Labor Relations Board,       *
                                         *

            Petitioner,             *

                                       *   Appeal from the National

      v.                             *   Labor Relations Board.

                                       *

Monson Trucking, Inc.,            *

                                     *

           Respondent.         *

_____

Submitted: November 16, 1999
Filed: February 23, 2000

_____

Before WOLLMAN, Chief Judge, LAY, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The National Labor Relations Board ("Board") petitions this Court to enforce an unfair labor practice order ("Order") it issued against Respondent Monson Trucking, Inc. for violating § 8(a)(1) and (3) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1), (3) (1994), in actions Monson took relating to the rehiring of a lawfully-discharged employee, Calvin Anderson.

For the first time, in its opening brief to this Court, Monson raises several objections to the Board's Order that, it argues, preclude enforcement. Even if we were inclined to agree with Monson's arguments, however, we must conclude that we have

no jurisdiction to consider them because Monson failed to urge them before the Board. Accordingly, we must enforce the Board's Order.

## I.

Monson discharged Anderson after the union incorrectly informed Monson that Anderson had failed to pay his union dues, a violation of the union security provision of the controlling collective bargaining agreement. When the union informed Monson of the error, Monson initially refused to rehire Anderson. Shortly thereafter, however, Monson did rehire Anderson, but only as a new probationary employee rather than at his previous seniority level. Although Anderson's seniority later was restored, he was not compensated for the wage differential and certain fringe benefits he lost in the interim, such losses apparently amounting to approximately $1,500.

Anderson filed unfair labor practice charges against Monson[1] for unlawfully discharging him in violation of the Act and sought to recover his lost wages and benefits. The matter progressed to a hearing before an administrative law judge ("ALJ") who, finding no violation of the Act, concluded that all of Anderson's claims against Monson should be dismissed.

On appeal to the Board, the Board's General Counsel (who presents the employee's case) filed exceptions to the ALJ's determination. In his exceptions and accompanying brief, the General Counsel argued, apparently for the first time in this dispute, inter alia, that Monson violated the Act by refusing to rescind Anderson's

---

[1] Although the Union was charged with, and found liable for, violating the Act, that aspect of the Order is not at issue here.

termination immediately upon learning that Anderson actually had paid his dues and for refusing to compensate Anderson for the resulting loss in pay and benefits.[2]

In response, Monson filed an answer, but did not address this argument; Monson did not file any cross-exceptions. Without the benefit of Monson's now-stated objection to the General Counsel's theory of liability, the Board issued its decision. Although differing somewhat in its reasoning, the Board agreed with the ALJ that Monson's "initial termination of Anderson simply constituted the required compliance with the union-security clause negotiated by the parties" and did not violate the Act. Monson Trucking Inc., 324 N.L.R.B. 933, 935 (1997). Nonetheless, embracing the General Counsel's theory as found in his exceptions, the Board concluded that "Monson's initial failure to reinstate Anderson and its subsequent failure to employ him at his former pay and benefits constitute unlawful discrimination against Anderson" in violation of the Act. Id. at 936. The Board ordered "make-whole relief" to compensate Anderson for his lost wages and benefits. Id. Monson did not challenge the Order through a motion for reconsideration. See 29 C.F.R. § 102.48(d) (1999) (permitting party to move for "reconsideration, rehearing, or reopening of the record" following Board's determination).

## II.

Monson now raises essentially three objections to the Order and asserts that we have jurisdiction to consider them notwithstanding Monson's failure to urge them before the Board: (i) the theory under which Monson was found liable is contrary to the Act; (ii) Monson's liability under this theory was not fully litigated; and (iii) the Board's five-year delay in issuing its Order precludes enforcement.

---

[2] Although the General Counsel's explanation of this theory in his exceptions and accompanying brief to the Board is somewhat cursory, Monson concedes that the General Counsel raised it. See Brief of Respondent Monson at 3.

Our jurisdiction to consider Monson's arguments is limited by § 10(e) of the Act which provides in pertinent part:  "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the Court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."  29 U.S.C. § 160(e); see Woelke & Romero Framing Inc. v. NLRB, 456 U.S. 645, 666 (1982) (holding that courts of appeals "lack[] jurisdiction to review objections that were not urged before the Board").  Unless the Board has "patently traveled outside the orbit of its authority so that there is, legally speaking, no order to enforce," NLRB v. Cheney Cal. Lumber Co., 327 U.S. 385, 388 (1946); see  Alwin Mfg. Co. v. NLRB, 192 F.3d 133, 143 n.13 (D.C. Cir. 1999) (describing this inquiry as whether Board's determination was "obviously ultra vires"), or unless there is "a showing within the statutory exception of 'extraordinary circumstances[,]' the failure or neglect of the respondent to urge an objection in the Board's proceedings forecloses judicial consideration of the objection in enforcement proceedings."  NLRB v. Ochoa Fertilizer Corp., 368 U.S. 318, 322 (1961).

Section 10(e) embodies the "general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."  United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952).  In order for this Court to consider a party's objection, the party must have apprised the Board "that [it] intended to press the question now presented" to us.  Marshall Field & Co. v. NLRB, 318 U.S. 253, 255 (1943).  Accordingly, "the critical question in satisfying section 10(e) is whether the Board received adequate notice of the basis for the objection."  Alwin Mfg. Co., 192 F.3d at 143.

### III.

Monson contends that it should not be penalized for not filing exceptions or cross-exceptions because the ALJ's determination was entirely in its favor and did not

address the instant theory of liability.  See 29 C.F.R. § 102.46(e) (stating that cross-exceptions relate to "any portion of the [ALJ's] decision").  Even assuming, arguendo, that Monson was not required to file exceptions to a favorable ruling, it was required to provide the Board with some indication of its opposition to the General Counsel's theory of liability.  At the very least, Monson should have pressed its objections before the Board in a motion for reconsideration.  See Woelke, 456 U.S. at 666 (stating employer "could have objected to the Board's decision in a petition for reconsideration or rehearing.  The failure to do so prevents consideration of the question by the courts."); International Ladies' Garment Workers' Union v. Quality Mfg. Co., 420 U.S. 276, 281 n.3 (1975) (same).

Monson attempts to distinguish Woelke because, in that case, the Board raised the relevant issue sua sponte.  Here, Monson argues, because the General Counsel raised the theory of liability in his exceptions, the issue was before the Board, thereby satisfying § 10(e).  To this effect, Monson points to Gardner Mechanical Services, Inc. v. NLRB, 115 F.3d 636 (9th Cir. 1997), which held that Woelke did not bar a prevailing party from raising an issue before the court of appeals that it did not raise in exceptions to the ALJ's determination, where "the pertinent issue was clearly before the Board" because the ALJ specifically had ruled on the relevant issue in that party's favor.  Id. at 641 (concluding, in such circumstances, that even though only union and General Counsel filed exceptions to ALJ's decision, employer "cannot be said to have waived its . . . argument for failing to except to a ruling in its favor").  Gardner, however, is distinguishable from the present case because here the Board had no benefit of an ALJ decision in Monson's favor on the relevant issue and thus had no indication that Monson would bring his current objection to us.[3]

---

[3]  Monson's other cases also are inapposite.  See NLRB v. United States Postal Serv., 833 F.2d 1195, 1202 (6th Cir. 1987) (concluding that relevant objection actually was urged and "vigorously disputed by the parties before the Board"), supplemented as to remedy only by, 837 F.2d 476 (6th Cir. 1988) (unpublished table decision); Local 900, Int'l Union of Elec. Workers v. NLRB, 727 F.2d 1184, 1194 (D.C. Cir. 1984)

In any event, mere "discussion of an issue by the Board does not necessarily prove compliance with section 10(e)." Local 900, Int'l Union of Elec. Workers v. NLRB, 727 F.2d 1184, 1191-92 (D.C. Cir. 1984) (observing that in neither Woelke nor International Ladies' Garment "was the Board deprived of the opportunity to discuss relevant issues . . . . Rather, the problem was that the Board was not given notice of the parties' objections to the Board's solutions, and hence the Board had no opportunity to address those objections."). Nothing in the General Counsel's exceptions or Monson's silence apprised the Board that Monson "intended to press the question now presented" to us. Marshall Field & Co., 318 U.S. at 255. Monson put absolutely nothing before the Board to counter the General Counsel's theory of liability—no objections, no arguments, absolutely nothing and there was nothing in the record before the Board to suggest what Monson's objections to this Court might be. Cf. Georgia State Chapter Ass'n of Civilian Technicians v. FLRA, 184 F.3d 889, 891 (D.C. Cir. 1999) (concluding that it lacked jurisdiction to review objections under analogous FLRA provision where "[w]e can say with confidence that none of these objections, none of these arguments, was ever urged until the case arrived in this court.").

We conclude that Monson failed to comply with § 10(e). Furthermore, we cannot say that the Board patently traveled outside the orbit of its authority in interpreting the Act or that there are any extraordinary circumstances which overcome Monson's failing to raise its objections to the Board. Accordingly, we have no jurisdiction to consider Monson's objections to the legal theory under which it was found liable for violating the Act.

Turning next to Monson's assertion that the Order should not be enforced because "the parties never litigated the lawfulness of Monson's post-termination conduct," Brief of Respondent Monson at 15, we reject it for the same reasons as stated

_____

(holding that party's objection, though somewhat vague, was statutorily sufficient).

above.  See also International Ladies' Garment Workers', 420 U.S. at 281 n.3 ("[W]e do not address [the company's] objection that it was denied procedural due process because the Board based its order upon a theory of liability . . . allegedly not charged or litigated before the Board [because it] failed to file a petition for reconsideration [and there were no] extraordinary circumstances").  Monson could have urged this objection to the Board in response to the General Counsel's exceptions or in a motion for reconsideration, but did not.

The Board acknowledged that "[t]he consolidated complaint does not separately allege that Monson unlawfully failed to rescind the discharge and fully reinstate Anderson."  Monson Trucking, Inc., 324 N.L.R.B. at 936 n.7.  Nevertheless, reviewing the circumstances surrounding Anderson's discharge and rehiring as developed at the hearing before the ALJ, the Board concluded "this conduct constitutes an unlawful continuation of the discharge alleged in the complaint, and that the matter was fully litigated at the hearing."  Id.  The background facts were before the Board; it simply applied a legal standard to those facts with which Monson now disagrees.[4]  If the General Counsel's theory of liability was not as fully considered as Monson would like, that result is the consequence of Monson's failure to urge its objections before the Board either in cross-exceptions, in its answer to the General Counsel's exceptions, or in a motion for reconsideration.[5]

---

[4] While we note that the ALJ did sustain Monson's objection to litigating the amount of relief due to Anderson if liability were found, leaving such determinations to a compliance proceeding, the facts underlying Anderson's discharge and rehiring were presented at the hearing.

[5] To the extent Monson objects to the Board's theory of liability because it contends the proper legal standard requires a showing that anti-union animus motivated its actions and that it was prevented from developing a factual record on that issue, any such result was foreordained by Monson's failure to inform the Board of Monson's position that such a showing was necessary.

Finally, Monson's argument that the five years it took for the Board to issue its Order precludes enforcement of the Order also is not properly before us because Monson neglected to urge this point to the Board in a motion for reconsideration. There are no extraordinary circumstances here that would permit us to look past Monson's failure nor does the delay render the Order patently outside the orbit of the Board's authority. Cf. NLRB v. Mountain Country Food Store, Inc., 931 F.2d 21, 22 (8th Cir. 1991) (outside § 10(e) objection context, declining to enforce Board order because—in contrast to situation here—changed circumstances following Board's nearly seven-year delay in issuing its determination, meant ordered remedy "no longer addresses a meaningful controversy" and thus "is incapable of meaningful compliance or effective enforcement").

IV.

Having reviewed all of Monson's objections to the Board's Order to determine whether we have jurisdiction to consider them, and concluding that we do not, we do not address the merits of Monson's claims. We grant the Board's petition and order the enforcement of its Order against Monson. See Handicabs, Inc. v. NLRB, 95 F.3d 681, 684 (8th Cir. 1996) (summarily enforcing Board's order where petitioner's defenses were not urged before Board and, therefore, were barred by § 10(e)), cert. denied, 521 U.S. 1118 (1997).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.