# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3646

_____

| | | |
|---|---|---|
| Des Moines Mailers Union,<br>Teamsters Local No. 358, | * | |
| | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an |
| | * | Order of the National Labor |
| National Labor Relations Board, | * | Relations Board. |
| | * | |
| Respondent, | * | |
| | * | |
| Des Moines Register and Tribune<br>Company, | * | |
| | * | |
| | * | |
| Intervenor on Appeal. | * | |

_____

Submitted: June 18, 2004
Filed: August 25, 2004

_____

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

The Des Moines Mailers Union, Teamsters Local No. 358 ("the Union"), petitions for review of an order of the National Labor Relations Board ("Board") dismissing an unfair labor practice complaint against the Des Moines Register and Tribune Company ("the Register"). We deny the petition for review.

This dispute concerns negotiations over a new collective-bargaining agreement between the Register and the Union to succeed an agreement that covered a period from July 19, 1998, through July 18, 2001. The expired agreement included a provision that the Union says guaranteed lifetime employment for 40 journeyman situation holders in the Register's mailroom. A journeyman "situation" is a full-time position with regular working days, regular off-days, and a workweek of 37½ hours. The Register contends that the job guarantee expired with the old collective-bargaining agreement in July 2001. Given its view of the agreement, the Register insisted, as a condition of continued negotiations for a new collective-bargaining agreement, that the Union bargain about the number of full-time journeyman positions. The Union disagreed, and as of October 2001, the parties reached an impasse.

The General Counsel of the Board brought an unfair labor practice complaint, alleging that the Register violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act as amended, 29 U.S.C. §§ 158(a)(1), (5), by bargaining to impasse on a "permissive" subject of bargaining. Parties are obliged to negotiate about "mandatory" subjects listed in § 9(a) of the Act, that is, "rates of pay, wages, hours of employment, or other conditions of employment," 29 U.S.C. § 159(a), but they are not required to consider other subjects (labeled "permissive") during collective bargaining. *E.g., NLRB v. Wooster Div. of Borg-Warner Corp.*, 356 U.S. 342, 349 (1958); *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 509 (2d Cir. 2002). In this case, if the number of journeyman situations constituted an accrued benefit under the expired agreement, and could not be changed in the future without the Union's consent, then the subject would be a "permissive" one about which the Union was not required to bargain. If, on the other hand, the number of situations guaranteed after July 2001 was unresolved by the expired agreement, then it would constitute a mandatory subject of bargaining. *See* 29 U.S.C. § 158(d); *Pepsi-Cola Bottling Co. of Fayetteville, Inc.*, 330 N.L.R.B. 900, 902 n.19 (2000).

The General Counsel argued that Section 3.02(E) of the 1998-2001 collective-bargaining agreement unambiguously guaranteed the number of full-time journeyman situations in the Register's mailroom beyond the expiration of the agreement. An administrative law judge agreed, and issued a bench decision finding that the Register engaged in unfair labor practices. The Register filed exceptions to the initial decision, and the Board rejected the decision of the administrative law judge. The Board concluded that the General Counsel had failed to show that the number of journeyman situations was a permissive subject of bargaining, and it dismissed the complaint. *Des Moines Register and Tribune Co.*, No. 18-CA-16243-1, 2003 WL 22002145, at *4-5 (N.L.R.B. August 20, 2003).

The General Counsel bears the burden of establishing a violation of the Act, *O'Neil's Mkts. v. United Food and Commercial Workers' Union*, 95 F.3d 733, 736 (8th Cir. 1996), and he exercises exclusive control over the issues contained in any complaint that he files. *Int'l Union of Operating Eng'rs v. NLRB*, 325 F.3d 818, 830 (7th Cir. 2003). In this case, the General Counsel relied exclusively on the plain language of Section 3.02(E), contending that it unambiguously created a lifetime job guarantee for a number of journeyman situations. Section 3.02(E) of the 1998-2001 agreement provides:

> The 40 full-time situations will be maintained *for as long as 40 of the Journeyman situation holders employed as of the signing of the contract continue to be employed and desiring a full-time situation.* Thereafter, the Company shall maintain a number of full-time situations equivalent to the number of Journeyman situation holders employed as of the signing of this contract who remain employed and desiring a full-time situation.

(App. 57) (emphasis added).

A contractual term is ambiguous if it is reasonably susceptible of more than one construction, and we agree with the Board that there are two reasonable constructions of Section 3.02(E). The provision's use of the phrase "for as long as" *could* bear the interpretation advanced by the Union, *i.e.*, that the journeyman situation holders are entitled to employment indefinitely into the future. But when viewed in the context of a collective-bargaining agreement that expired in 2001, we agree with the Board that "it also could mean only that the number of situations would not be reduced (unless a situation holder left) during the life of the contract." 2003 WL 22002145, at *4. After all, there is a reason why the Supreme Court opined that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement," *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 207 (1991), and the Seventh Circuit said "a court should cast a cold eye on contentions that a contract with a fixed term actually created a perpetual obligation." *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 606 (7th Cir. 1993) (en banc). The most natural reading of a contract that has defined endpoints of 1998 and 2001 is that terms in the contract apply to events between 1998 and 2001. If a contractual provision is worded in such a way that its duration can be construed consistent with the fixed term of the agreement, then that reading typically is at least a reasonable construction.

Section 3.02(E) does not state expressly that the job guarantee is to be a part of all future collective-bargaining agreements, *cf. Detroit Newspapers*, 326 N.L.R.B. 700, 705 (1998) (finding lifetime job guarantee), *rev'd on other grounds*, *Detroit Typographical Union No. 18 v. NLRB*, 216 F.3d 109 (D.C. Cir. 2000), and the General Counsel elected not to present extrinsic evidence that might have shed light on the ambiguity. *Cf. Bidlack*, 993 F.2d at 608-09 (extrinsic evidence may overcome presumption that ambiguous contractual terms do not create perpetual obligation). We therefore agree with the Board that the General Counsel failed to meet his burden of proving that the 1998-2001 collective-bargaining agreement created a lifetime job guarantee for the journeyman situation holders. Given that failure of proof, we uphold the Board's conclusion that the Register did not commit an unfair labor

practice by insisting that the Union discuss the number of full-time journeyman situations as part of negotiations for a new collective-bargaining agreement.[1]

For the foregoing reasons, we deny the petition for review.

_____

[1]The Union briefly contends for the first time on appeal that other provisions of the 1998-2001 agreement demonstrate that Section 3.02(E) unambiguously creates a lifetime job guarantee, and that even if Section 3.02(E) is ambiguous, then it must be construed against the Register, as drafter of the language.  We decline to consider those contentions, because Section 10(e) of the Act, 29 U.S.C. §160(e), precludes us from addressing objections that were not presented to the Board, except in certain extraordinary situations not alleged here.  *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665-66 (1982); *Garment Workers v. Quality Mfg. Co.*, 420 U.S. 276, 281 n.3 (1975); *NLRB v. Monson Trucking, Inc.*, 204 F.3d 822, 825-26 (8th Cir. 2000).  The Union argues that it was not required to raise these arguments before the Board, because the Union's position prevailed before the administrative law judge, but we have held that a party who prevails before an administrative law judge must at least present objections to the Board in a motion for reconsideration.  *Monson Trucking*, 204 F.3d at 826.