# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-2306/2392

_____

St. John's Mercy Health Systems,     *
doing business as St. John's Mercy     *
Medical Center,     *
    *
          Petitioner,     *
    *    Appeals from the National Labor
      v.     *    Relations Board.
    *
National Labor Relations Board,     *
    *
          Respondent.     *

_____

Submitted: December 15, 2005
Filed: February 1, 2006

_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

The National Labor Relations Board ( the "Board") ordered St. John's Mercy Medical Center ("St. John's") to comply with a union-security provision in its collective-bargaining agreement ("CBA") by discharging nurses who had not paid union dues. We affirm.

I. Background

St. John's is a not-for-profit corporation operated by the Sisters of Mercy. Its principal offices and place of business are in St. Louis County, Missouri. St. John's operates an acute, tertiary care hospital regulated by the state of Missouri. St. John's has 4700 employees, including approximately 1400 registered nurses ("RNs"). Since July 27, 1999, the RNs have been represented by the United Food & Commercial Workers Union Local 655, AFL-CIO, CIC (the "Union"). At issue in this case is a CBA entered into by St. John's and the Union on October 23, 2001.[1]

Article 4 of the CBA contains a provision that requires the RNs employed by St. John's to pay union dues:

Section 4.1 Conditions of Employment. As a condition of continued employment, all RNs included in the collective bargaining unit shall, prior to ninety-one (91) days after the start of their employment with the Medical Center, or the effective date of this Agreement, whichever is later, become members of the Union and pay to the Union the periodic monthly dues and initiation fees uniformly required of all Union members. The Union shall certify to the Medical Center the amount that constitutes periodic monthly dues.

Section 4.2 requires St. John's to discharge those nurses that do not comply with Section 4.1:

Section 4.2 Discharge of Non-members. The failure of any RN to become or remain a member of the Union at such required time by paying initiation fees and regular monthly dues uniformly required as a condition of membership shall obligate the Medical Center, upon written

---

[1] This agreement was in effect at the time the complaint was filed, but expired on October 22, 2004. The new CBA is effective from October 23, 2004, through October 22, 2007. The new CBA does not contain a union-security provision.

notice from the Union to such effect and to the further effect that Union membership was available to such RN on the same terms and conditions generally available to other members, to discharge such RN within ten (10) working days following the receipt of such notice.[2]

These clauses have led to a number of disputes between St. John's and the Union.[3]

The Union has complied with its obligations necessary for enforcement of the union-security provision during the time period at issue: it posted a notice informing the RNs of their obligation to pay dues, sent individual notices to RNs informing them of their delinquency and giving them two weeks to comply,[4] and submitted the required letter to St. John's requesting the discharge of those RNs who did not pay

---

[2] Section 8(a)(3) of the National Labor Relations Act (the "Act") authorizes union-security provisions, except in those states that have enacted "right-to-work" laws pursuant to Section 14(b) of the Act. 29 U.S.C. § 158(a); 29 U.S.C. § 164(b). Missouri does not have a right-to-work statute.

[3] Neither of two prior disputes between the parties is part of this appeal. In the first dispute, the Union filed a grievance on April 19, 2002. This grievance was arbitrated on January 10, 2003. On April 16, 2003, the arbitrator ordered St. John's to discharge those RNs who had not paid their union dues. However, the Union and St. John's agreed to a settlement that required St. John's to pay all of the unpaid dues but that allowed St. John's to avoid discharging any RNs. The Union's second complaint went to arbitration on December 15, 2003. On April 2, 2004, the arbitrator ordered St. John's to enforce the union-security provision and terminate those RNs who had not paid the required dues. On April 23, 2004, the Union filed an action in the United States District Court for the Eastern District of Missouri, Eastern Division, seeking enforcement of the arbitrator's award. The district court enforced the arbitrator's decision and ordered the firing of seventy-three RNs. United Food and Commercial Workers Union, Local No. 655 v. St. John's Mercy Health Sys., No. 4:04 CV480CDP, 2005 WL 2333922 (E.D. Mo. Sept. 22, 2005).

[4] The Union rejected as untimely the payment of dues from an RN who attempted to pay the dues three months after receiving notice of the delinquency. The Union continues to seek her discharge.

their dues after being notified of the delinquency. Since early 2002, when the Union first wrote such a letter to St. John's, St. John's has refused to enforce the union-security provision. In April 2003 and April 2004, St. John's sent letters to RNs who had not paid union dues. These letters informed the RNs that St. John's would not fire anyone for the failure to pay dues.

On April 22, 2004, the Union filed an unfair labor practice charge with the Board. The Union sought the discharge of fourteen RNs who failed to pay union dues from December 19, 2003, through April 22, 2004. In response to the Union's charge, the Board's General Counsel issued a complaint in June 2004. The complaint asserted violations of Sections 8(a)(1) and (5) of the Act.[5] 29 U.S.C. § 158(a)(1), (5). The complaint was argued before an Administrative Law Judge ("ALJ") on September 14, 2004. The ALJ granted the Union's request and ordered the discharge of the RNs. St. John's filed exceptions to the ALJ's ruling, but the ALJ's order was upheld by a panel of the Board on March 31, 2005. The portion of the Board's order that St. John's now appeals requires St. John's to comply with Section 4.2 of the CBA by discharging fourteen named employees.

---

[5] Section 8(a)(5) of the Act states: "It shall be an unfair labor practice for an employer . . . to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title." Making a unilateral change to a CBA regarding a condition of employment–such as refusing to honor a union security provision–constitutes a refusal to bargain collectively. First Nat'l Maint. Corp. v. NLRB, 452 U.S. 666, 674-75 (1981). A violation of Section 8(a)(5) of the Act produces a derivative violation of Section 8(a)(1) "by interfering with the collective bargaining rights of employees." Porta-King Bldg. Sys. V. NLRB, 14 F.3d 1258, 1261 (8th Cir. 1994).

## II. Standard of Review

"We will enforce the Board's order if the Board has correctly applied the law . . . even if we might have reached a different decision had the matter been before us de novo." Town & Country Elec., Inc. v. NLRB, 106 F.3d 816, 819 (8th Cir. 1997). The Board's construction of the Act is "entitled to considerable deference," Ford Motor Co. v. NLRB, 441 U.S. 488, 495 (1979), and must be upheld if it is reasonable and consistent with the policies of the Act. Id. at 497; Kirkwood Fabricators, Inc. v. NLRB, 862 F.2d 1303, 1306 (8th Cir. 1988).

## III. Discussion

St. John's admits that it failed to comply with the union-security provision in its CBA. There is no question that, under normal circumstances, the failure to honor this provision would constitute a violation of Section 8(a)(5) of the Act. See, e.g., NLRB v. Katz, 369 U.S. 736, 746 (1962). However, St. John's offers three reasons that its failure to honor the provision is not an unfair labor practice. First, it argues that discharging fourteen nurses would violate the public policy of Missouri. Second, it contends that Congress intended to treat health care institutions differently than other businesses. Third, it argues that because the current CBA between St. John's and the Union lacks a union-security provision, ordering the discharge of RNs based on the prior agreement is an improper remedy. We address each of these arguments in turn.

## A. Public Policy

We assume without deciding that acting in a manner necessary to comply with a state statute can be a valid defense to an alleged violation of Section 8(a)(5) of the Act. However, there is no Missouri statute that prohibits the enforcement of a union-security provision or the discharge of nurses. Missouri's Medical Treatment Facilities

Licensing Law is the statute most directly on point.[6] Mo. Rev. Stat. § 197.289 (2004). This law simply requires St. John's to keep "sufficient licensed and ancillary nursing personnel on duty on each nursing unit to meet the needs of each patient in accordance with accepted standards of quality patient care." Id. The law does not mandate the specific number of RNs that need to be provided, nor dictate the manner in which St. John's has to procure its RNs.

St. John's has offered numerous statistics that illustrate regional and national nursing shortages, but these statistics do not impact our analysis as to whether the remedy ordered by the Board violates existing public policy. Even if we assume the existence of a nursing shortage, this problem would only make it more difficult for St. John's to hire the necessary replacements, not impossible for it to do so.[7] In the past, in response to a shortage of nurses created by a strike, St. John's hired temporary and per diem employees.[8] It also transferred employees from affiliated hospitals and recruited volunteer nurses.

The Board asserts that if Missouri's Licensing Law were interpreted to prohibit enforcement of the union-security provision, it would be preempted by the Act. Because we find that St. John's can comply with both the Licensing Law and the Board's order, we need not consider this argument.

_____

[6] St. John's also calls our attention to other Missouri statutes including the Nursing Practice Act, Mo. Rev. Stat. §§ 335.011-335.257, but these statutes offer even less support for its position than the Licensing Law.

[7] St. John's also argues that public policy is more likely to be violated because of the special skills of the RNs who will be discharged if the Board's order is enforced. We reject this argument for the same reason—that these circumstances make the task of filling the vacancies more difficult, but not impossible.

[8] St. John's may even be able to hire back the same nurses it is being ordered to discharge. We take no position as to whether this may constitute a separate unfair labor practice.

B. Congressional Intent

St. John's argues that Congress intended to treat hospitals differently than other businesses. It further argues that the Board abused its discretion when it ignored Congress's intent and ordered the firing of fourteen RNs. We find this argument unpersuasive.

In Section 8(g) of the Act, Congress carved out an exception for the health care industry that requires a special notice before health care employees can strike. 29 U.S.C. § 158(g). Since no similar language exists within Section 8(a), we can presume that while Congress was concerned about the impact of a strike in the health care industry, it did not intend to treat the health care industry differently when it comes to the enforcement of union-security provisions in CBAs. Although hospitals may be hesitant to agree to union-security provisions in CBAs, there is not a clear reason that they should be able to avoid the duties of those provisions once they have been accepted. Congress also amended the Act in 1974, crafting two additional provisions related to the health care industry.[9] The absence of any similar amendment relating to union-security provisions in the health care industry is further evidence that Congress did not intend to exempt hospitals from Section 8(a) of the Act.

Because we find that Congress has not manifested an intent to exempt the health care industry from the union-security provisions of the Act, the Board cannot have abused its discretion by failing to recognize such an intent.

---

[9] Congress extended coverage of the Act to employees of not-for-profit hospitals. 29 U.S.C. § 152(14). Congress also amended Section 8(d) to require more stringent strike notices for health care institutions. 29 U.S.C. § 158(d).

C. Absence of a Union-Security Provision in the Current CBA

St. John's argues that because there is not a union-security provision in the new CBA, it is an inappropriate remedy to order the firing of nurses as required by the old CBA. We need not consider the merits of this argument because St. John's waived the argument by not making it before the Board.[10]

Section 10(e) of the Act states: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e).[11] St. John's argues that its argument is not waived because it objected specifically to the portion of the remedy requiring it to discharge fourteen RNs. In support of this objection, however, St. John's only argued the public policy implications as already described. Although the Board was told that a new CBA existed, St. John's never asserted that the order to discharge the nurses was inappropriate because the new CBA did not contain a union-security provision.

St. John's cites NLRB v. Monson Trucking, Inc., 204 F.3d 822 (8th Cir. 2000), in support of its position that its argument was not waived. Monson Trucking itself states that the Board must receive "adequate notice of the basis for the objection." Id. at 826 (internal quotation omitted). Objecting to a remedy is not sufficient to indicate the specific basis for the objection. "The test is whether the objection, fairly read, apprises the Board that the objector intended to pursue the issue later presented to the court." NLRB v. Saint-Gobain Abrasives, Inc., 426 F.3d 455, 459 (1st Cir. 2005). Based on the general nature of St. John's exception, the Board could have reasonably

---

[10] In making this determination, we grant the motion by St. John's to supplement the record, and we consider the Brief in Support of Exceptions to the ALJ's Decision that is included in the supplemental record.

[11] We find no such "extraordinary circumstances" in this case.

assumed that the only reason St. John's objected to the remedy was the public policy argument that had already been raised to the ALJ and the Board.

In summary, we hold that the general exceptions voiced by St. John's to the Board were not sufficiently specific to preserve the argument it is making on appeal.

III. Conclusion

For the foregoing reasons, we grant the Board's petition to enforce its Decision and Order dated March 31, 2005, and deny the petition for review sought by St. John's.

_____