# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 25, 2014          Decided April 11, 2014

No. 13-7033

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,
LOCAL 1200,
APPELLANT

v.

DETROIT FREE PRESS, INC., A SUBSIDIARY OF GANNETT CO.,
INC., DOING BUSINESS AS WUSA-TV,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00484)

*Robert E. Paul* argued the cause and filed the briefs for appellant.

*Donald J. Munro* argued the cause and filed the brief for appellee.

Before: GRIFFITH, *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: The International Brotherhood of Electrical Workers, Local 1200 serves as the exclusive bargaining representative for "technicians" employed by WUSA-TV, a Washington, D.C.-based television station. Between December 29, 2008, and December 31, 2010, the union and the station operated under a collective bargaining agreement. In November 2010, with the agreement set to expire, the parties began negotiating a successor agreement. Although they extended the 2008 agreement through February 2011,[1] the station refused further extensions. Thus, the parties operated without a collective bargaining agreement until they negotiated a successor agreement, which took effect on February 9, 2012.

The 2008 and 2012 agreements contain essentially identical grievance and arbitration provisions. If a dispute arises the parties first seek to resolve it through "informal" and then "formal" grievance conferences. If conferences do not resolve the grievance, then "either party may demand arbitration by written notice." Arbitration is "final and binding on both parties."

The two agreements also contain nearly identical provisions concerning layoffs. Before laying off an employee, the station and the union "must first bargain . . . in good faith on alternatives to avoid a layoff." If layoffs occur, "[p]art-time Technicians shall be laid off prior to the lay-off of any full-time Technicians," and "[l]ayoffs on account of reduction of staff . . . shall be made in inverse order of seniority." The latter provision includes a caveat: "the Station may . . . lay off an employee[] of higher seniority" if not doing so "would have an adverse effect on the operation of the Station when all factors are considered."

---

[1] The parties dispute precisely when the extension expired, but they agree that it did not survive beyond the end of February 2011.

The station must give two weeks' written notice before laying off an employee.

The present dispute began on January 30, 2012, when the station, by letter, notified technician Karen Peterson that "[her] position is being eliminated effective today . . . in accordance with the IBEW collective bargaining agreement." At the time she was terminated, Peterson was the most senior technician working at the station. More than two weeks later, on February 16, the union representative filed a grievance alleging that "Peterson's position was unjustly terminated on 1/30/12" in "violat[ion of] Section 4.17.F [sic] and all other relevant Articles of the [2008 agreement]." Efforts to resolve the grievance through conferences failed, and the station refused to arbitrate the dispute.

The union then filed a complaint in the district court seeking to compel arbitration. The complaint alleged that by laying off Peterson, the station breached its contractual obligations to [1] bargain in good faith before layoffs, [2] lay off part-time technicians first, and [3] lay off technicians in inverse order of seniority. The union argued that Peterson's grievance was arbitrable under both the 2008 and the 2012 agreements. The district court granted summary judgment for the station. *Int'l Bhd. of Elec. Workers, Local 1200 v. Detroit Free Press, Inc.*, 923 F. Supp. 2d 199 (D.D.C. 2013). Because the grievance did not "arise under" the 2008 agreement, and the 2012 agreement was not yet in effect, the district court concluded that the station was not obligated to arbitrate. *Id.* at 203. The union timely appealed.

Generally, if a collective bargaining agreement contains an arbitration clause then courts presume disputes between the parties are arbitrable. *See, e.g.*, *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960). But that presumption is "limited to disputes arising under the contract."

*Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205 (1991); *see id.* at 209. A grievance filed after the expiration of a collective bargaining agreement "arise[s] under" that agreement and is therefore arbitrable only if: [1] "it involves facts and occurrences that arose before expiration," [2] a post-expiration action "infringes a right that accrued or vested under the agreement," or [3] "under normal principles of contract interpretation, the disputed contractual right survives expiration" of the agreement. *Id.* at 205-06.

Here, the union argues that Peterson's grievance is arbitrable under the 2008 agreement because the company violated accrued seniority protections by laying her off. We have previously stated that "[s]eniority is wholly a creation of the collective agreement and does not exist apart from that agreement." *Baker v. Newspaper & Graphic Commc'ns Union, Local 6*, 628 F.2d 156, 159-60 (D.C. Cir. 1980) (quoting *Local 1251, UAW v. Robertshaw Controls Co.*, 405 F.2d 29, 33 (2d Cir. 1968) (en banc)). Even if seniority in the abstract could vest or accrue, the rights at issue here—seniority-based protections against layoffs—would not. The 2008 agreement allows the station to lay off senior technicians first if following seniority "would have an adverse effect on the operation of the Station when all factors are considered." In *Litton*, the Court considered a seniority provision that allowed more senior employees to be laid off unless "other things such as aptitude and ability are equal." 501 U.S. at 209. The *Litton* court held that that provision was not a vested or accrued right because factors such as aptitude and ability "do not remain constant, but change over time." *Id.* at 210. So too here, where "all factors" "adversely [a]ffect[ing]" the station are constantly in flux. As in *Litton*, these seniority provisions do not "freeze any particular order of layoff." *Id.* Consequently, they do not create vested or accrued rights.

Nor do the qualified seniority protections against layoffs contained in the 2008 agreement survive expiration "under normal principles of contract interpretation." *Id.* at 206. By its terms, the agreement "bec[a]me effective on December 29, 2008, and shall remain in effect until midnight December 31, 2010"—or, as extended, February 2011. "The most natural reading of a contract that has defined endpoints . . . is that terms in the contract apply to events between [those endpoints]." *Des Moines Mailers Union, Teamsters Local No. 358 v. NLRB*, 381 F.3d 767, 770 (8th Cir. 2004). The union devotes much effort to arguing that post-expiration coverage need not be explicit. But the language and structure of the agreement do not even imply that the seniority protections against layoffs in this contract survive expiration. Instead, the union relies entirely on extrinsic evidence surrounding Peterson's termination to dispute the agreement's natural meaning. That is inadequate. We will not "use [] extrinsic evidence to create such obligations nowhere alluded to in the contract" and "unjustifiably deprive the parties of the limitation of liabilities that is implicit in . . . a written contract having a definite expiration date." *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 607-08 (7th Cir. 1993) (en banc).

Moreover, the union's extrinsic evidence is itself ambiguous. The letter terminating Peterson's employment said the layoff was "undertaken in accordance with the IBEW collective bargaining agreement." The union claims that by referring to the agreement in its letter and in contemporaneous oral statements, the station acknowledged that the agreement survived. But the Station had good reason to act "in accordance with" the agreement, even post-expiration. The National Labor Relations Act requires that a company continue to comply with certain "terms and conditions" (not including arbitration clauses) of expired collective bargaining agreements. *Litton*, 501 U.S. at 198-200. Acting otherwise may constitute an unfair labor practice, subjecting the company to a lawsuit. *Id.* To avoid that

result, companies often continue to operate according to expired agreements. Doing so does not indicate that the agreement itself—the only source of any duty to arbitrate—remained in effect, but only that the NLRB will require a company to continue to adhere to certain obligations. *See, e.g.*, *Int'l Bhd. of Teamsters, Local Union 1199 v. Pepsi-Cola Gen. Bottlers, Inc.*, 958 F.2d 1331, 1335-37 (6th Cir. 1992); *see also Litton*, 501 U.S. at 200-01. With only ambiguous extrinsic evidence, the union has failed to disprove the 2008 agreement's natural interpretation.

The union also argues that Peterson's grievance is arbitrable under the 2012 agreement. We cannot see how. The letter Peterson received stated that she was terminated on January 30, 2012. The grievance form filed by the union confirms that she was in fact "terminated on 1/30/12." Because no agreement was in effect on that date, the station was not obliged to provide her with two weeks' notice. Thus the layoff was effective on the date Peterson was notified. Nothing in the 2012 agreement suggests that it requires arbitration of grievances arising before it became effective.[2] And the union cannot bootstrap itself into a longer contract duration by waiting to file its grievance over a pre-contractual dispute.

The judgment of the district court is

*Affirmed*.

---

[2] Even if two weeks' notice were required on January 30, that would not somehow convert an immediate termination into a termination two weeks later. Rather, by terminating Peterson on that date, the station would simply have breached its notice obligation.