# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3102
_____

Securitas Critical Infrastructure Services, Inc.

*Petitioner*

v.

National Labor Relations Board

*Respondent*

_____

No. 14-3216
_____

National Labor Relations Board

*Petitioner*

v.

Securitas Critical Infrastructure Services, Inc.

*Respondent*

_____

National Labor Relations Board

_____

Submitted: September 23, 2015
Filed: March 24, 2016

_____

Before SMITH, BYE, and KELLY, Circuit Judges.

_____

BYE, Circuit Judge.

Securitas Critical Infrastructure Services, Inc., (Securitas) petitions for review of an order of the National Labor Relations Board (NLRB). The order allowed a certain class of Securitas's workers to seek union representation when the NLRB determined that Securitas failed to show the workers were supervisors under Section 2(11) of the National Labor Relations Act (the Act), 29 U.S.C. § 152(11). The NLRB cross petitions for enforcement of its related order determining Securitas unlawfully refused to bargain with the union as the certified representative of the workers after a majority of them voted for union representation. We deny Securitas's petition for review and grant the NLRB's cross petition for enforcement of its order.

I

Securitas provides security services for nuclear power plants throughout the United States. On January 1, 2014, Securitas began providing security for Xcel Energy at a nuclear power plant in Monticello, Minnesota. Shortly after Securitas took over the security operations at the plant, the union representing the security officers, United Security Professionals, Local 2, petitioned the NLRB seeking to represent a group of mid-level security officers called lieutenants.[1] The Regional

_____

[1]The security forces at the Monticello plant use a military style chain of command. From bottom to top, there are unarmed watchpersons, armed security officers, lieutenants, captains, an on-site Security Operations Supervisor, an on-site Project Manager, and finally, an off-site Area Vice President Nuclear. The Monticello plant has 120 security officers (comprised of both watchpersons and armed officers), twenty-four lieutenants, five captains, one Security Operations Supervisor, and one Project Manager (a position which had not been filled at the time

Director of the region covering Minnesota held a hearing to determine whether the lieutenants were employees or supervisors, the former eligible for union representation and the latter not.

At the hearing, Securitas asserted, among other things, that the lieutenants exercised independent judgment and thus possessed supervisory authority – the authority to responsibly direct other employees[2] – in their role as "response team leaders" in the event of a security threat. A response team leader commands the security force during an attack on the plant or some other contingency event. In a hostile attack, a response team leader would direct security officers to return fire, interject themselves between the attackers and the plant, and provide guidance on the appropriate use of deadly force.

Only one lieutenant, Michael Stidmon, testified at the hearing. He testified generally about his duties as a lieutenant, and specifically about his duties as a response team leader. With respect to his position generally, Stidmon indicated "every aspect of [his] job" was highly regulated at the local, state and federal level, as well as by the client, Xcel Energy, and his employer, Securitas. Jt. App. at 314. Stidmon further testified he did not have any duties that involved independent

---

of the first NLRB hearing). Securitas provides security twenty-four hours a day, operating five separate shifts each supervised by one captain, with an average of five lieutenants working per shift.

[2]The authority to responsibly direct other employees is one of twelve specifically enumerated supervisory functions in the Act, the presence of any one of which disqualifies an employee from union representation and collective bargaining. See 29 U.S.C. § 152(11). The other eleven enumerated supervisory functions are: (1) the authority to hire; (2) the authority to transfer; (3) the authority to suspend; (4) the authority to lay off; (5) the authority to recall; (6) the authority to promote; (7) the authority to discharge; (8) the authority to assign; (9) the authority to reward other employees; (10) the authority to discipline other employees; and (11) the authority to adjust employees' grievances. Id.

judgment unless (a) he received approval from a higher authority, (b) the duties were significantly or predominantly dominated by policies, procedures or regulations, or (c) his decisions were so routine, clerical or ministerial as to not really warrant serious judgment. Id. at 327. With respect to his specific duties as a response team leader in the event of an attack on the plant, Stidmon indicated most of the strategy used to respond to an attack "has already for the most part been preformulated" as a result of the many policies, procedures and regulations governing security at a nuclear power plant. Id. at 340. When challenged on that answer with a question asking, "but you have important decision-making authority when you're the [response team leader], as far as deploying and redeploying officers, correct?," the lieutenant reiterated "Yes. And there again, that also has been for the most part preformulated." Id.

Based upon the evidence presented at the hearing, the Regional Director determined Securitas failed to meet its burden of showing the lieutenants were statutory supervisors. In part, the Regional Director noted that NLRB precedent requires some showing that a putative supervisor is held accountable for a subordinate's performance. See Addendum at 17 (citing In re Oakwood Healthcare, Inc., 348 N.L.R.B. 686, 691-92 (2006)). The Regional Director stated the record did not contain evidence of specific instances where a lieutenant had been disciplined or otherwise impacted by the performance of security officers on his or her team, whether in relationship to the role as a response team leader or otherwise. Id. Having found that Securitas failed to meet its burden, the Regional Director gave directions for an election to be conducted by secret ballot to determine whether the lieutenants wished to be represented by the union.

Securitas then exercised its right to have the Regional Director's decision reviewed by the NLRB. On November 5, 2014, a three-member panel of the NLRB issued an order denying Securitas's request for review, with one member indicating he would grant review. In the order, the NLRB indicated it was "a close case" on

whether the lieutenants had the authority to responsibly direct other employees. Addendum at 29. The NLRB focused on the lieutenants' role as response team leaders during an attack on the plant, in particular whether lieutenants exercised independent judgment in carrying out a "battle plan." Id. The NLRB noted the burden fell on Securitas to prove this point, and said "no examples were given of how a lieutenant would have to make decisions based on the [situation], not even to the extent of general examples of choices from among different fire and movement, force protection, or other security tactics that would not have revealed the details of the Employer's contingency planning." Id.

Securitas claimed it could not present evidence of specific examples of a lieutenant's role in the event of an attack on a nuclear power plant because such evidence would be considered "safeguards information" not subject to disclosure under rules and regulations promulgated by the NRC. See 42 U.S.C. §§ 2167, 2168; 10 C.F.R. § 73.22. The NLRB rejected this argument, stating "there are procedures for protective orders in Board proceedings that extend to documents and testimony." Id. (citing Overnite Transp. Co., 329 N.L.R.B. 990, 997 (1999); NFL Mgmt. Council, 309 N.L.R.B. 78, 88 (1992); and Pepsi-Cola, 307 N.L.R.B. 1378, 1379 n.1 (1992)).

Meanwhile, the lieutenants at the Monticello plant voted to be represented by the union. After the vote, Securitas refused to recognize or negotiate with the union as the certified representative of the lieutenants. The union then filed a refusal-to-bargain charge against Securitas. A three-member panel of the NLRB found the charge meritorious, and entered an order finding that Securitas unlawfully refused to bargain with the union. Securitas then filed this petition for review with the Eighth Circuit challenging the determination that it failed to carry its burden of proving the supervisory status of lieutenants. The NLRB filed a cross petition seeking enforcement of its refusal-to-bargain order.

II

The determination whether an employee is excluded from the protections of the Act because of supervisory status is a fact-intensive question "which calls upon the [NLRB's] special function of applying the general provisions of the Act to the infinite gradations of authority within a particular industry." NLRB v. Chem Fab Corp., 691 F.2d. 1252, 1256 (8th Cir. 1982) (citing NLRB v. Broyhill Co., 514 F.2d 655, 658 (8th Cir. 1975)). As a consequence, the NLRB's factual findings are reviewed "under the deferential substantial evidence standard of review." NLRB v. Whitesell Corp., 638 F.3d 883, 890 (8th Cir. 2011) (internal quotation marks and citation omitted).

Under this deferential standard, "the Board must produce more than a mere scintilla of evidence; it must present on the record such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, taking into consideration the record in its entirety including the body of evidence opposed to the Board's view." Id. (internal quotation marks and citations omitted). But "[w]hen conflicting evidence is presented to the Board, we may not preempt the Board's choice between two fairly conflicting views of that evidence." JHP & Assocs., LLC v. NLRB, 360 F.3d 904, 911 (8th Cir. 2004) (internal quotation marks and citation omitted).

Securitas contends the NLRB's conclusion that the lieutenants at the Monticello plant are not supervisors is unsupported by substantial evidence and is contrary to law. The NLRB, however, never concluded the lieutenants *are not* supervisors; it merely concluded Securitas failed to meet its burden of proving the lieutenants *are* supervisors. See NLRB v. Kentucky River Cmty. Care, Inc., 532 U.S. 706, 711-12 (2001) (indicating the burden of proof is upon the party claiming supervisory status). The narrow issue before us, then, is whether substantial evidence supports the NLRB's determination that Securitas failed to carry its burden.

-6-

In the agency proceedings, Securitas asserted the lieutenants had supervisory status under several of the specifically enumerated supervisory functions listed in the Act. In our Court, Securitas focuses on just one – whether the lieutenants had the authority to responsibly direct other employees when acting as a response team leader during an attack on the plant. The authority to responsibly direct other employees is only supervisory under the Act if that authority is exercised with independent judgment. Kentucky River, 532 U.S. at 713. "[A] judgment is not independent if it is dictated or controlled by detailed instructions, whether set forth in company policies or rules, the verbal instructions of a higher authority, or in the provisions of a collective bargaining agreement." Oakwood Healthcare, 348 N.L.R.B. at 693.

Substantial evidence in the record supports the NLRB's determination that Securitas failed to show lieutenants exercised independent judgment in their role as response team leaders. Lieutenant Stidmon testified that essentially every aspect of his job was controlled by company and client rules, policies and procedures, as well as local, state, and federal regulations. As to any duties not significantly or predominantly dominated by policies, procedures, or regulations, Stidmon testified that he either would receive approval from a higher authority, or that his decisions were so routine, clerical or ministerial as to not warrant serious judgment. The record also establishes that a lieutenant must follow applicable procedures – some dictated by the physical security plan approved by the NRC – when acting as a response team leader in the event of a hostile attack at the plant. This is enough evidence to satisfy the substantial evidence standard, and to support the NLRB's determination that Securitas failed to carry its burden of proving the lieutenants were supervisors under 29 U.S.C. § 152(11).

Securitas contends the agency decision is contrary to law inasmuch as the NLRB required Securitas to provide specific examples of the lieutenants' independent judgment in their role as response team leaders. To support this contention, Securitas argues NLRB precedent only requires the possession of authority to engage in any of

the functions listed under § 152(11), not the actual exercise of that authority, see, e.g., Multimedia KSDK, Inc. v. NLRB, 303 F.3d 896, 899 (8th Cir. 2002), and thus it was error to require Securitas to offer specific examples of a lieutenant's actual exercise of independent judgment as a response team leader. We do not, however, read the NLRB's decision as imposing a specific *requirement* on Securitas to offer examples of a lieutenant's exercise of independent judgment as a response team leader. Instead, we read the NLRB's reference to the lack of examples as a general comment on the overall quality of Securitas's evidence, and merely one factor it considered when determining Securitas failed to carry its burden. The NLRB has commented on the lack of specific examples in other situations akin to the emergency/dynamic situation involved here, where an employer who has the opportunity to offer specific examples of independent judgment, but fails to do so, is determined not to have carried its burden of proving supervisory status. See Pro-Tec Fire Servs. v. Int'l Ass'n of Fire Fighters, Local 1-61, Case 31-RC-133248, 2014 WL 5388832, at *1 n.1 (N.L.R.B. Oct. 22, 2014) (noting "independent judgment and discretion would reasonably be expected from Fire Captains in emergency situations," but holding the employer failed to carry its burden of proving fire captains were supervisors where the record lacked evidence of specific examples of a fire captain exercising independent judgment in such situations, because "assumptions based on the nature of emergency, fire, and rescue work cannot replace the specific evidence of independent judgment and discretion required under [NLRB precedent]").

Securitas also contends it could not offer specific examples of a lieutenant exercising independent judgment as a response team leader because such information would be classified "safeguards information," and the NLRB erred by stating Securitas could have submitted "safeguards information" in the agency proceedings under a protective order. Securitas argues the disclosure of safeguards information is a criminal act, even when disclosure would be pursuant to a court or agency protective order.

In response, the NLRB contends we lack jurisdiction to address this issue under 29 U.S.C. § 160(e), which provides that "[n]o objection that has not been urged before the Board . . . shall be considered by the court[.]" The NLRB argues Securitas was obligated to move the Board to reconsider its protective order reasoning pursuant to 29 C.F.R. § 102.48(d)(1), and its failure to do so deprives our court of jurisdiction to consider the issue. See Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 666 (1982) (noting that when the NLRB bases its decision on a ground not raised by the parties, a petitioner's failure to move the NLRB for reconsideration or rehearing "prevents consideration of the question by the courts"); see also NLRB v. Monson Trucking, Inc., 204 F.3d 822, 825-26 (8th Cir. 2000) ("In order for this Court to consider a party's objection, the party must have apprised the Board 'that [it] intended to press the question now presented' to us.") (quoting Marshall Field & Co. v. NLRB, 318 U.S. 253, 255 (1943)).

In reply, Securitas argues the claim that classified "safeguards information" could not be divulged was specifically addressed at the representation hearing and therefore it was not required to move for reconsideration. In the alternative, Securitas contends that even if it should have moved for reconsideration, the NLRB's protective order reasoning falls within the exception that allows a court to exercise jurisdiction where the NLRB has "patently traveled outside the orbit of its authority so that there is, legally speaking, no order to enforce." NLRB v. Cheney Cal. Lumber Co., 327 U.S. 385, 388 (1946).

We find it unnecessary to even determine whether we have jurisdiction to address this issue, because the disclosure of "safeguards information" was not the exclusive means by which Securitas could have satisfied its burden of proof in any event. As the NLRB noted, and we agree, Securitas failed to present any specific exemplar evidence of a lieutenant exercising independent judgment as a response team leader, "not even to the extent of general examples of choices from among different fire and movement, force protection, or other security tactics that *would not*

*have revealed the details* of the Employer's contingency planning [i.e., safeguards information]."  Addendum at 29 (emphasis added).  Our conclusion that Securitas could have satisfied its burden of proof through means other than the disclosure of safeguards information, but failed to do so, makes it unnecessary to address whether the NLRB erred by stating Securitas could have submitted safeguards information under a protective order.

III

For the reasons stated, we deny Securitas's petition for review and grant the NLRB's cross petition for enforcement of its order.

_____

-10-
