# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1450

_____

Tschiggfrie Properties, Ltd.

*Petitioner*

v.

National Labor Relations Board

*Respondent*

_____

No. 17-2198

_____

Tschiggfrie Properties, Ltd.

*Respondent*

v.

National Labor Relations Board

*Petitioner*

_____

National Labor Relations Board

_____

Submitted: May 15, 2018
Filed: July 24, 2018

_____

Before BENTON, KELLY, and STRAS, Circuit Judges.

_____

BENTON, Circuit Judge.

Tschiggfrie Properties, Ltd., petitions for review of the National Labor Relations Board's findings that it violated sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (3). *See **Tschiggfrie Props., Ltd.**,* 365 NLRB No. 34, 2017 WL 680506, at *1-2 (2017). The Board seeks to enforce all of its order. Having jurisdiction under 29 U.S.C. § 160(f), this court partly enforces the order and remands for further proceedings.

I.

In May 2015, Tschiggfrie's employees unionized. Employee Darryl Galle initiated the process and served as observer for the union election. He frequently discussed the union, prompting some employees to complain that he "harrass[ed]" them at work. Tschiggfrie's lawyer communicated with the union, but Galle did not change his behavior. Tschiggfrie's president decided to issue Galle a written warning on August 17, 2015. It reprimanded Galle "for discussing union organizational viewpoints with fellow employees during work" and ordered him to "stop immediately."

About six weeks later, while looking for Galle at work, Tschiggfrie's manager found Galle's laptop open to personal websites. He confronted Galle, who confirmed the laptop was his but denied visiting personal websites during work. Not believing Galle, the manager fired him on the spot. The manager later testified that Galle's habit of sleeping on the job also contributed to the decision to fire him.

The union charged that the warning and the firing were unfair labor practices. The Board's General Counsel filed a complaint and scheduled a hearing. Preparing

-2-

for the hearing, Tschiggfrie twice interviewed one of Galle's coworkers. The Board moved to amend its complaint to allege that the interviews were coercive interrogations in violation of the Act.

The administrative law judge found that the warning and the firing were violations—but not the interviews. The Board adopted the ALJ's findings about the warning and the firing, but disagreed about the interviews, finding they also violated the Act. *Tschiggfrie Props.*, 365 NLRB No. 34, at *1-2. Tschiggfrie petitions for review.

Because Tschiggfrie does not contest the Board's finding about the warning, this court enforces the parts of the Board's order addressing that violation. *See NLRB v. Bolivar-Tees, Inc.*, 551 F.3d 722, 727 (8th Cir. 2008) ("The Board is entitled to summary enforcement of the uncontested portions of its order."). As for the contested parts of the order, this court enforces them "if the Board has correctly applied the law and its factual findings are supported by substantial evidence on the record as a whole, even if we might have reached a different decision had the matter been before us de novo." *ConAgra Foods, Inc. v. NLRB*, 813 F.3d 1079, 1084 (8th Cir. 2016). This court "defer[s] to the Board's interpretation of the [Act] so long as it is rational and consistent with that law," but reviews de novo all other legal conclusions. *Cellular Sales of Mo., LLC v. NLRB*, 824 F.3d 772, 775 (8th Cir. 2016) (internal quotation marks omitted).

II.

Tschiggfrie contests the Board's finding it fired Galle for union activity in violation of section 8(a)(1) and (3). Tschiggfrie argues it fired him for misusing its Wi-Fi and sleeping on the job. "Although an employer violates Section 8(a)(1) and (3) of the Act if it discharges an employee for engaging in protected activities, 'employers retain the right to discharge workers for any number of other reasons

-3-

unrelated to the employee's union activities.'" ***Nichols Aluminum, LLC v. NLRB***, 797 F.3d 548, 554 (8th Cir. 2015), *quoting* **NLRB v. Transportation Mgmt. Corp.**, 462 U.S. 393, 394 (1983).

"The so called *Wright Line* analysis is applied when an employer articulates a facially legitimate reason for its termination decision, but that motive is disputed." **NLRB v. RELCO Locomotives, Inc.**, 734 F.3d 764, 780 (8th Cir. 2013), *citing* **Wright Line**, 251 NLRB 1083 (1980). The *Wright Line* analysis is a burden-shifting framework:

> [T]he Board's General Counsel must prove "that the employee's protected conduct was a substantial or motivating factor in the adverse action." . . . If, and only if, the General Counsel meets that burden, the burden shifts to the employer to exonerate itself by showing that it would have taken the same action for a legitimate, nondiscriminatory reason regardless of the employee's protected activity.

**Nichols Aluminum**, 797 F.3d at 554 (some internal quotation marks omitted), *quoting* **Transportation Mgmt.**, 462 U.S. at 401.

The ALJ required the General Counsel to initially prove "union activity on the part of employees, employer knowledge of that activity, and antiunion animus on the part of the employer." According to the ALJ, "the General Counsel does not have to prove a connection between the antiunion animus and the specific adverse employment action." The Board adopted the ALJ's analysis, reiterating that the General Counsel's initial burden has no "nexus element." **Tschiggfrie Props.**, 365 NLRB No. 34, at *1 n.1. Tschiggfrie argues that the Board misapplied *Wright Line* by allowing the General Counsel to meet its initial burden without showing a connection or nexus between anti-union animus and the firing.

-4-

The Board contends this court cannot consider the argument, because Tschiggfrie did not preserve it. Under section 10(e) of the Act, this court cannot consider any "objection that has not been urged before the Board . . . unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." **§ 160(e)**. *See also* **29 C.F.R. § 102.46(b)(2), (g)** (2017) ("Any exception . . . not specifically urged shall be deemed to have been waived. . . . No matter not included in exceptions or cross-exceptions may thereafter be urged before the Board, or in any further proceeding."). It is not necessarily enough to generally object to a finding. "[T]he Board must receive adequate notice of the basis for the objection." *St. John's Mercy Health Sys. v. NLRB*, 436 F.3d 843, 848 (8th Cir. 2006) (internal quotation marks omitted). "The test is whether the objection, fairly read, apprises the Board that the objector intended to pursue the issue later presented to the court." *Id.*

The Board relies on *NLRB v. Chipotle Services, LLC*. There, this court held that it had no jurisdiction to address the argument that the Board misapplied the General Counsel's initial *Wright Line* burden, because the employer "did not raise this point before the Board, or otherwise contest the administrative law judge's application of the Wright Line standard." *NLRB v. Chipotle Servs., LLC*, 849 F.3d 1161, 1162-63 (8th Cir. 2017).

But Tschiggfrie did contest the ALJ's application of the *Wright Line* standard—specifically, the General Counsel's initial burden. Before the ALJ, Tschiggfrie argued that even if the General Counsel had proven anti-union animus, it was animus of Tschiggfrie's president, not the manager who fired Galle. The ALJ's opinion noted this argument, responding that "to prove animus sufficient to carry the government's initial burden, the General Counsel does not have to prove a connection between the antiunion animus and the specific adverse employment action." Before

the Board, Tschiggfrie took "exception to the ALJ's finding that there was sufficient evidence of antiunion animus to justify the shifting of the burden under the *Wright Line* framework . . . ."

The Board directly addressed the relevant argument in its opinion.  A two-member majority agreed with the ALJ, while a third member argued that "the General Counsel must establish a link or nexus." ***Tschiggfrie Props.***, 365 NLRB No. 34, at *1 n.1.  True, "mere discussion of an issue by the Board does not necessarily prove compliance with section 10(e)." ***NLRB v. Monson Trucking, Inc.***, 204 F.3d 822, 826 (8th Cir. 2000) (internal quotation marks omitted).  But here, it shows the Board's awareness of the basis for Tschiggfrie's objection.  *See **FedEx Freight, Inc. v. NLRB***, 816 F.3d 515, 521 (8th Cir. 2016) ("The Board was aware of the [employer's] challenge . . . , as shown by . . . concurring statements attached to the two summary affirmance orders by the Board."); ***NLRB v. FedEx Freight, Inc.***, 832 F.3d 432, 438 (3rd Cir. 2016) ("Board member Harry Johnson's concurrence . . . indicates [the employer's objection] provided sufficient notice of [it's] challenge").  It also shows that the Board had an "opportunity to address" Tschiggfrie's argument. *See **Monson Trucking***, 204 F.3d at 826, *quoting **Local 900, Int'l Union of Elec., Radio and Mach. Workers v. NLRB***, 727 F.2d 1184, 1191-92 (D.C. Cir. 1984).  *Cf. **Marshall Field & Co. v. NLRB***, 318 U.S. 253, 256 (1943) (section 10(e) adopts "the salutary policy . . . of affording the Board opportunity to consider on the merits questions to be urged upon review of its order").

Tschiggfrie's objection apprised the Board that it intended to pursue the issue it presents to this court. *See **May Dept. Stores Co. v. NLRB***, 326 U.S. 376, 386 n.5 (1945) (objection that order was "not supported or justified by the record" was sufficient under the circumstances to preserve a challenge that it was overbroad).

B.

On the merits of Tschiggfrie's argument, this court's opinion in *Nichols Aluminum* controls.  There, this court reaffirmed that the General Counsel meets its initial *Wright Line* burden only if it proves "that the employee's protected conduct was a substantial or motivating factor in the adverse action."  ***Nichols Aluminum***, 797 F.3d at 554, *quoting* ***Transportation Mgmt.***, 462 U.S. at 401.  This is consistent with the statutory requirement that "the General Counsel carries the burden of proving the elements of an unfair labor practice."  *See* ***Transportation Mgmt.***, 462 U.S. at 401, *citing* **§ 160(c)** *and* **29 C.F.R. § 101.10(b)**.

In order to meet this burden, proving "[s]imple animus toward the union is not enough."  ***Nichols Aluminum***, 797 F.3d at 554 (internal quotation marks omitted).  Contrary to the standard the Board applied here, the General Counsel must prove a connection or nexus between the animus and the firing—*i.e.*, that the "discriminatory animus toward [the employee's] 'protected conduct was a substantial or motivating factor in' [the employer's] decision to discharge him . . . ."  ***Id.***, *quoting* ***Transportation Mgmt.***, 462 U.S. at 401.  *See* ***RELCO***, 734 F.3d at 783 (the General Counsel meets its burden by proving that "the termination was motivated by anti-union animus"); ***NLRB v. Rockline Industries, Inc.***, 412 F.3d 962, 966 (8th Cir. 2005) (the General Counsel meets its burden by proving that "the employer acted as it did on the basis of anti-union animus").  "While hostility to [a] union is a proper and highly significant factor for the Board to consider when assessing whether the employer's motive was discriminatory, . . . general hostility toward the union does not itself supply the element of unlawful motive."  ***Nichols Aluminum***, 797 F.3d at 554-55 (alterations in original).

"Because the Board did not hold the General Counsel to its burden of proving discriminatory animus toward [Galle's] protected conduct was a substantial or motivating factor in [Tschiggfrie's] decision to discharge him, . . . we are unable to

enforce the Board's order" as to the firing.  *Id.* at 555 (internal quotation marks and citation omitted).

Remand is appropriate where "the Board offers an alternative theory on which to uphold its decision."  *Multimedia KSDK, Inc. v. NLRB*, 303 F.3d 896, 900 (8th Cir. 2002) (en banc), *citing NLRB v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 721-22 (2001) *and NLRB v. Health Care & Ret. Corp. of Am.*, 511 U.S. 571, 584 (1994).  Here, the Board suggests that the proper burden was met and requests remand to apply it in the first instance.  This court remands for the Board to apply the *Wright Line* analysis consistent with this opinion.  *See Beverly Enters.-Minn. v. NLRB*, 266 F.3d 785, 789 (8th Cir. 2001) (remanding "in view of the Board's request").

III.

Tschiggfrie also contests the Board's finding that it coercively interrogated an employee in violation of the Act.  Section 8(a)(1) "makes it an unlawful labor practice for an employer to interrogate employees in a coercive manner which interferes with, restrains or threatens employees' right of self-organization protected by [the Act]."  *NLRB v. Douglas Div., Scott & Fetzer Co.*, 570 F.2d 742, 745 (8th Cir. 1978).  However, "[t]hat section does not prohibit all employer questioning of employees regarding unionization."  *Baptist Med. Sys. v. NLRB*, 876 F.2d 661, 665 (8th Cir. 1989).  "Questioning which does not coerce or restrain employees in their right to [engage in protected activity] is permissible."  *Greater Omaha Packing Co., Inc. v. NLRB*, 790 F.3d 816, 822 (8th Cir. 2015) (alteration in original).  "[W]hen properly exercised it is protected by the constitutional right to freedom of speech, which is recognized in § 8(c) of the Act."  *Baptist Med.*, 876 F.2d at 665, *citing* **§ 158(c)** ("The expressing of any views, argument, or opinion . . . shall not constitute . . . an unfair labor practice . . . if such expression contains no threat of reprisal or force or promise of benefit.").

To determine whether questioning is unlawfully coercive, this court considers "the totality of the[] circumstances." *See* **NLRB v. Louisiana Mfg. Co.**, 374 F.2d 696, 700 (8th Cir. 1967). This court identifies five "important" factors:

> a history of employer hostility and discrimination, the nature of the information sought (e.g., was the interrogator seeking information from which he could take action against individual employees), the identity of the questioner (i.e., what was his position in the company), the place and method of interrogation, and the truthfulness of the reply (e.g., did the interrogation inspire fear leading to evasive answers).

**Baptist Med.**, 876 F.2d at 665, *quoting* **General Thermo, Inc. v. NLRB**, 664 F.2d 195, 197 (8th Cir. 1981). *See* **Midland Transp. Co., Inc. v. NLRB**, 962 F.2d 1323, 1329 (8th Cir. 1992) ("we must look at the surrounding circumstances, which include" the five factors). "[T]he relevant question is . . . whether the [questioning] reasonably tended to coerce the employee not to exercise his right to engage in concerted activity." **Greater Omaha**, 790 F.3d at 822.

Here, the ALJ looked to the totality of the circumstances and found no violation, but the Board disagreed. The Board found the questioning per se unlawfully coercive because it was "in preparation for an unfair labor practice hearing" and Tschiggfrie did not expressly "provide [the employee] with assurances against reprisals" and "inform him that his participation . . . was voluntary." **Tschiggfrie Props.**, 365 NLRB No. 34, at \*1-2. The Board first outlined these "safeguards" in *Johnnie's Poultry Co.*, 146 NLRB 770, 775 (1964). The Board takes a "bright-line approach" to enforcing them in cases of questioning in preparation for an unfair labor practice hearing. *See* **Freeman Decorating Co.**, 336 NLRB 1, 19 (2001).

But this court has never endorsed this per se rule. In fact, this court did not enforce the Board's order in *Johnnie's Poultry* itself. **NLRB v. Johnnie's Poultry Co.**, 344 F.2d 617, 619 (8th Cir. 1965). Other circuits expressly reject the per se rule.

*See Cooper Tire & Rubber Co. v. NLRB*, 957 F.2d 1245, 1256 (5th Cir. 1992); *A & R Transp., Inc. v. NLRB*, 601 F.2d 311, 312-13 (7th Cir. 1979); *NLRB v. Monroe Tube Co., Inc.*, 545 F.2d 1320, 1328 & n.16 (2d Cir. 1976). *But see Standard-Coosa-Thatcher Carpet Yarn Div., Inc. v. NLRB*, 691 F.2d 1133, 1141 (4th Cir. 1982) (enforcing the Board's application of the per se rule). *But cf. Amalgamated Clothing Workers of Am. v. NLRB*, 424 F.2d 818, 825 (D.C. Cir. 1970) (reciting the *Johnnie's Poultry* safeguards with approval).

The Board argues that the safeguards "dispel the potential for coercion." But not all union-related questioning is unlawfully coercive. *Baptist Med.*, 876 F.2d at 665. The Board has not shown that the fact that questioning occurs in preparation for a hearing necessarily makes it unlawfully coercive. Requiring the safeguards as a per se rule is "contrary to [the] essential statutory principle" that "unless the [questioning] itself coerces an employee not to exercise his rights, it is protected by Section 8(c) and is not a violation of Section 8(a)(1)." *See Greater Omaha*, 790 F.3d at 822-23 (rejecting the Board's finding that questioning was necessarily coercive because it "conveyed displeasure with [the employee's] protected activity"). *Cf. Rossmore House*, 269 NLRB 1176, 1177 (1984) (rejecting a rule that "questions concerning union sympathies" are always "inherently coercive," because the rule "completely disregarded the circumstances surrounding an alleged interrogation and ignored the reality of the workplace"), *enforced sub nom. Hotel Employees Local 11 v. NLRB*, 760 F.2d 1006 (9th Cir. 1985).

While the interrogation standards in *Johnnie's Poultry* are relevant in determining whether an interview was coercive, this court declines to adopt them as a per se rule. *See NLRB v. Midwest Hanger Co. & Liberty Eng. Corp.*, 474 F.2d 1155, 1161 n.5 (8th Cir. 1973) (recognizing that "intimidation *may* . . . occur" if employers interrogate employees without meeting similar standards, but looking to the totality of the circumstances (emphasis added)).

Assuming this court could enforce the order on a totality-of-the-circumstances analysis, substantial evidence does not support it. This court "examine[s] the Board's findings more critically when, as here, the Board's conclusions are contrary to the ALJ's." *Nichols Aluminum*, 797 F.3d at 553. True, Tschiggfrie did not comply with all the *Johnnie's Poultry* safeguards, and the employee may have thought that the interviews, conducted by the manager and lawyer, were mandatory. But the questions, intended to help Tschiggfrie prepare its defense to the General Counsel's charges, were mostly about whether the employee had seen Galle sleeping or using his personal computer at work. As the ALJ said, the General Counsel proved only that "the subject of unions came up" in questions about Galle discussing the union at work. The employee testified that "they didn't ask me, but I had told them" about this issue. Also, the employee testified he knew he did not have to give specific responses, did not expect punishment or reward based on his responses, and "had nothing to lie about." This questioning could not reasonably tend to unlawfully coerce the employee. *See Midland Transp.*, 962 F.2d at 1329 (where a high-level official questioned an employee about voting in a union election, substantial evidence did not support finding a violation because there was "no evidence that [the employer's] questioning of [the employee] inspired fear of reprisal" and the employer had a "legitimate purpose for the conversation"); *Baptist Med.*, 876 F.2d at 665-66 (substantial evidence did not support finding a violation for "nonthreatening" questions to which the employee answered "freely and honestly"). This court does not enforce the part of the Board's order finding that the interviews were an unfair labor practice.

*******

Tschiggfrie's petition is granted. The parts of the order addressing the warning are enforced. The Board's findings about the firing and the interviews are set aside. The case is remanded to apply *Wright Line* consistent with this opinion to determine whether Tschiggfrie violated the Act in terminating Galle.

_____