# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-1585

_____

Starbucks Corporation

*Petitioner*

v.

National Labor Relations Board

*Respondent*

_____

No. 24-1890

_____

Starbucks Corporation

*Respondent*

v.

National Labor Relations Board

*Petitioner*

_____

National Labor Relations Board

_____

Submitted: March 18, 2025
Filed: June 17, 2025

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Section 8 of the National Labor Relations Act ("NLRA") permits employers to hold mandatory meetings with employees about unionization but prohibits employers from threatening or interrogating employees. 29 U.S.C. § 158(a). An employer threatens or interrogates an employee if, in light of the "entire factual context," the employer's statements or questioning would tend to coerce a reasonable employee not to exercise her labor rights. *See Greater Omaha Packing Co., Inc. v. NLRB*, 790 F.3d 816, 824 (8th Cir. 2015). Following a push to unionize at a Starbucks store, the store manager held one-on-one meetings with employees to discuss unionization. We must decide whether the National Labor Relations Board ("NLRB" or "the Board") applied the correct legal standard when it found that the store manager threatened and interrogated an employee. We conclude the Board did not because it erroneously stated that factual context such as the employee's reactions are "immaterial" in evaluating alleged Section 8 violations.

## I. Background

Workers United, a labor union that represents workers in various industries, began a unionizing campaign at a Starbucks store in Los Angeles in May 2022. Starbucks tasked the store manager, Leticia Nolda, with bringing awareness about unions to her team. Accordingly, she conducted one-on-one meetings with all the employees (referred to as partners) at the store, which lasted anywhere from five to twenty minutes.

On May 25, Nolda met one-on-one with shift supervisor Yesenia Alarcon and some other partners. Alarcon and Nolda had worked together for approximately two and a half years. During her meeting with Alarcon, Nolda stated that she was not in favor of the Union and she wished she knew who had started it, then paused. When

Alarcon did not respond, Nolda asked if she knew anything about the Union, and Alarcon answered that she did not.

Nolda advised Alarcon that the Union would charge dues, which she estimated could be about $500, though she did not know if those fees were monthly or one-time fees. Nolda expressed it was important to stay nonunion because the partners' benefits and raises could be affected if the store unionized. When Alarcon asked Nolda to clarify how her benefits could be affected, Nolda responded that she did not know. Nolda mentioned a Canadian store had unionized and told Alarcon that the employees were now paid less than nonunion stores in Canada. Alarcon later testified that she did not think that what happened at a Canadian store was relevant.

Nolda ended the meeting by expressing that she was drained and tired from meeting with lawyers and reiterated that she wished she knew who had started this. When Alarcon did not respond, Nolda told her about a government website that provided information about unions. Alarcon asked Nolda to send her the information about the website, but Nolda never did. Toward the end of the meeting, Nolda told Alarcon to see her or the district manager if she had any questions. They did not raise their voices during the meeting, which Alarcon agreed was "calm," though she did not feel free to leave the meeting. Alarcon opined that it sounded like Nolda was "venting." Alarcon faced no discipline or adverse consequences, nor did she claim to feel chilled from speaking or from supporting the union. The record does not reflect any instances of other partners feeling threatened, interrogated, or chilled. In August 2022, the store voted overwhelmingly to unionize.

Workers United filed charges against Starbucks with the NLRB, alleging that Nolda threatened economic retaliation to Alarcon's benefits and raises, and coercively interrogated her about union activities and sympathies. An administrative law judge ("ALJ") concluded that Nolda's conversation with Alarcon violated Section 8(a)(1) of the NLRA. The ALJ found that Nolda threatened Alarcon that employees' "benefits would be paused" and that "unionized stores may not get

[raises]," and interrogated Alarcon by remarking at the beginning and end of the meeting that she wished to know who started the unionization effort. The ALJ gave no weight to either Nolda's intent or Alarcon's subjective impressions, disclaiming them as "immaterial." In an order containing more footnotes than opinion, the Board affirmed the ALJ's determinations. Starbucks petitioned this court for review, arguing that the Board applied an incorrect standard for alleged Section 8(a)(1) violations.

## II. Discussion

We exercise *de novo* review over the Board's legal conclusions, determining whether the Board "started with the currently controlling law" and "correctly applied this law." *Tschiggfrie Props., Ltd. v. NLRB*, 896 F.3d 880, 884 (8th Cir. 2018); *Finley Hosp. v. NLRB*, 827 F.3d 720, 723-24 (8th Cir. 2016). We accept the Board's factual determinations if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e), (f).

We first consider whether the Board applied the proper legal standard to determine that Starbucks coercively interrogated and threatened Alarcon under Section 8(a)(1).[1] *See Finley*, 827 F.3d at 723-24 (The "[Board] must be sustained" if "it started with the currently controlling law" and "correctly applied this law.") Section 8(a)(1) prohibits an employer from "interfer[ing] with, restrain[ing], or

---

[1]The Board argues we may not consider this issue because it contends Starbucks did not raise it before the Board. *See* 29 U.S.C. § 160(e) (stating we cannot consider any "objection that has not been urged before the Board"); *see also St. John's Mercy Health Sys. v. NLRB*, 436 F.3d 843, 848 (8th Cir. 2006) ("The test is whether the objection, fairly read, apprises the Board that the objector intended to pursue the issue later presented to the court."). We disagree, finding ample evidence in the record that Starbucks "apprise[d] the Board that" the legal standard includes due consideration of the audience and the impact on employees. However, Starbucks failed to raise to the Board its alternative argument that an 8(a)(1) violation occurs only if the speaker is "aware[] that the statements could be understood [as a true threat]," so we will not consider that issue.

coerc[ing] employees in the exercise of [their] rights." 29 U.S.C. § 158(a). Section 8(c) explicitly recognizes that not all displeased communications from an employer to an employee are coercive: "The expressing of any views, argument, or opinion . . . shall not constitute or be evidence of an unfair labor practice . . . if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c). "Questioning which does not coerce or restrain employees in their right to [engage in protected activity] is permissible." *NLRB v. Douglas Div., Scott & Fetzer Co.*, 570 F.2d 742, 745 (8th Cir. 1978).

So, the "relevant question" for determining whether an 8(a)(1) violation occurred is "whether the [questioning or remarks] reasonably tended to coerce the employee not to exercise his right to engage in concerted activity." *Tschiggfrie Props.*, 896 F.3d at 887-88. Though this test for coercion is a reasonable-person test, the employer's alleged threat or interrogation is not viewed in a vacuum. When considering an alleged unfair labor practice, an employer's conduct must be examined in light of "the totality of the[] circumstances." *Id.* at 887 (alteration in original); *see also NLRB v. Va. Elec. & Power Co.*, 314 U.S. 469, 479 (1941) (explaining that the Board's finding of an unfair labor practice must be based "upon the whole course of conduct revealed by [the] record.").

We conclude the Board erred by adopting the ALJ's application of an improper legal standard. *See Finley*, 827 F.3d. at 723-24. Though the ALJ correctly articulated the basic test for determining whether a Section 8(a)(1) violation occurred, mere sentences later the ALJ erroneously stated that "[t]he actual intent of the speaker or the effect on the listener is immaterial" in assessing alleged 8(a)(1) violations. While we have never held that employees' subjective impressions are dispositive, we have also never stated that they are "immaterial." Indeed, we have weighed employees' subjective impressions to determine how a reasonable employee would objectively view her employer's conduct.[2] *See, e.g.*, *Baptist Med.*,

---

[2]The dissent argues that, by considering the subjective impressions an employee expressed after the interrogation, we fail to employ an objective standard. *Post* at 7. But our precedent suggests otherwise. The fifth factor of our totality-of-

-5-

876 F.2d at 665 (considering that employee "spoke freely, at length, and in a manner that did not indicate fear or intimidation" to support a finding that questioning did not amount to interrogation); *Midland Transp. Co. v. NLRB*, 962 F.2d 1323, 1329 (8th Cir. 1992) (noting lack of evidence that employer's questioning of employee "inspired fear of reprisal"). Here, the ALJ disclaimed any reliance on Alarcon's reactions to Nolda's statements. Those include Alarcon's impressions that Nolda was "venting" and the meeting was "calm," and Alarcon's opinion that Nolda's references to unionized employees at a Canadian store were not "relevant." Accordingly, we conclude the ALJ and the Board invoked and applied an improper legal standard.[3]

## III. Conclusion

For the foregoing reasons, we vacate the Board's opinion and order and remand for further proceedings consistent with this opinion.[4]

SHEPHERD, Circuit Judge, dissenting.

In my view, the Board applied the proper objective standard when it found that Starbucks coercively interrogated and threatened Alarcon under Section 8(a)(1),

___

the-circumstances test—"the truthfulness of the reply (e.g., did the interrogation inspire fear leading to evasive answers)"—requires courts to consider an employee's subjective impression. *See Baptist Med. Sys. v. NLRB*, 876 F.2d 661, 665 (8th Cir. 1989). So long as we are considering employees' subjective impressions, we see no meaningful distinction between those expressed during an interrogation and those expressed afterwards.

[3]We decline to decide in the first instance whether substantial evidence supports the Board's determinations or whether *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984) altered the substantial-evidence standard of review.

[4]*See Dakota, Minn. & E. R.R. Corp. v. U.S. Dep't of Lab. Admin. Rev. Bd.*, 948 F.3d 940, 947-48 (8th Cir. 2020) (remanding to agency where use of incorrect legal standard may have infected agency's conclusion).

and the majority's quasi-subjective standard is not in line with our body of case law. Thus, I respectfully dissent.

The majority opinion correctly points out that the "'relevant question' for determining whether an 8(a)(1) violation occurred is 'whether the [questioning or remarks] reasonably tended to coerce the employee not to exercise his right to engage in concerted activity.'" Ante, at 5 (alteration in original) (quoting Tschiggfrie Props., Ltd. v. NLRB, 896 F.3d 880, 887-88 (8th Cir. 2018)). The use of the word "reasonably" indicates that the standard is objective. Puzzlingly, though, the majority proceeds to import a subjective element into the analysis, allowing an employee's later testimony about her subjective perceptions that were not communicated to the employer to potentially carry the day in this action. See ante, at 5 (determining that "subjective impressions" can be considered in the totality analysis). This error, in my view, is inconsistent with our holdings in Baptist Medical Systems v. NLRB, 876 F.2d 661, 665 (8th Cir. 1989), and Midland Transportation Co. v. NLRB, 962 F.2d 1323, 1329 (8th Cir. 1992).

In Baptist Medical, this Court relied on the fifth factor of our totality-of-the-circumstances test, "the truthfulness of the [employee's] reply" in response to an allegedly unlawful interrogation, to hold that an employer did not violate Section 8(a)(1). 876 F.2d at 665. Noting that the employee "spoke freely, at length, and in a manner that did not indicate fear or intimidation," the Court found in favor of the employer. Id. at 665. Tellingly, though, the Court went on to clarify that the ALJ erred by considering the employee's subsequent testimony explaining her *subjective* state of mind that was not communicated during the allegedly unlawful interrogation:

> The ALJ found it relevant in examining this issue that [the employee] testified that she was concerned that she would be denied her customary raise as a result of expressing her union support. However, [her] testimony in this regard indicates that no disciplinary action has actually been taken against her and that she only speculated that she would be denied a raise in the future and that this denial would be a

-7-

result of her union support. We do not consider such speculation to constitute evidence that [the employee] suffered adverse consequences as a result of her expression of her union sympathies.

Id. at 665-66. Similarly in Midland, this Court placed great weight on the "veracity of [the employee's] reply" to allegedly unlawful questioning. Midland Transp., 962 F.2d at 1329. Because the employee "truthfully told [the employer] of his support for the union," there was "no evidence" that the employer's questioning "inspired fear of reprisal." Id.

In both Midland and Baptist Medical, the Court examined the *actual reply* of the employee to make an inference about the employee's state of mind. Neither of these cases allowed the Board to consider an employee's "subjective impressions" communicated *after* the alleged unlawful act in the analysis. But see Ante at 5. And rightfully so—to allow an employee or employer the ability to tilt the scale by later testifying about his or her subjective perceptions runs afoul of our longstanding view that "the test of interference, restraint, or coercion . . . does not depend upon whether coercion succeeded or failed." See Russell Stover Candies, Inc. v. NLRB, 551 F.2d 204, 208 (8th Cir. 1977); NLRB v. Intertherm, Inc., 596 F.2d 267, 271 (8th Cir. 1979) (reiterating that "the test is not whether an attempt at coercion has succeeded or failed"). If the employee *responds* to an allegedly unlawful interrogation, the reviewing entity may examine the objective "truthfulness of the reply" to make an inference about whether a *reasonable person* would have felt coerced. Tschiggfrie, 896 F.3d at 887 (citation omitted). A reviewing body should not, however, weigh subsequent testimony about an employee's subjective state of mind when that employee did not respond to the interrogation.

Here, Alarcon expressly stated that she did not respond when Nolda asked who started the union movement at Starbucks; Alarcon instead "just stared . . . back" at Nolda and "a long pause . . . [of] three to five seconds" occurred in which Nolda stared at Alarcon "eye to eye." Throughout the entire interaction, Alarcon did not tell Nolda what she knew about the Union, even when Nolda directly asked. Thus, the ALJ rightfully ignored any testimony about Alarcon's subjective impressions

from the meeting with Nolda as "the truthfulness of [Alarcon's] reply" *was* irrelevant to the analysis: Alarcon *did not respond*.

Because the Board applied the correct legal standard, I would proceed to step two of the analysis and hold that substantial evidence supports the Board's decision. Nolda, the highest ranking official at the store, sought information about which employee began the union campaign from Alarcon, alone, in an employee-only area, for twenty minutes.  A reasonable mind could conclude that Nolda violated Section 8(a)(1) by asking questions that "reasonably tended to coerce [Alarcon] not to exercise [her] right to engage in concerted activity."  See Tschiggfrie, 896 F.3d at 887-88 (citation omitted).  Therefore, I respectfully dissent.

_____